**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | : : | Case No. 2:09-CV-00864 |
| Plaintiff, | : : | Judge George C. Smith |
| v. | : : | Magistrate Judge King |
| **JP MORGAN CHASE BANK, N.A.,** | : : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS**
**AND**
**DEFENDANT'S MOTION FOR A STAY PENDING RESOLUTION OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I. INTRODUCTION**

The Motion to Compel filed by Plaintiff Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") should be denied because it seeks information beyond the scope of Plaintiff's Amended Complaint and its pre-suit investigation and conciliation efforts. In that regard, Defendant will be filing a Motion for Partial Summary Judgment on or before Tuesday, November 2, 2010, asking the Court to limit the scope of Plaintiff's case to that which it investigated and conciliated. Moreover, the broad discovery that Plaintiff seeks has no bearing whatsoever on the specific factual allegations in Plaintiff's Amended Complaint, which are narrowly tailored to <u>one</u> named person, in <u>one</u> position, at <u>one</u> location, and <u>one</u> management team. In the interests of judicial economy, Defendant respectfully moves this Court to stay its ruling on Plaintiff's Motion to Compel until the Court has ruled on Defendant's Motion for Partial Summary Judgment as that ruling may provide guidance to the Court on the discovery issues addressed herein.

A. **Factual Background.**

Aimee Doneyhue was employed by Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase") as a mortgage consultant (or home loan sales originator) on its National Ohio Sales Team in the Home Loan Direct ("HLD") department in Columbus, Ohio, from May 7, 2007 until April 30, 2008 when she voluntarily resigned her employment. During Ms. Doneyhue's tenure, the HLD department in Columbus, Ohio operated out of Chase's facility on Polaris Parkway ("the Polaris facility") and was managed by Sales Director Cynthia Ray. Ms Ray, in turn, had four Sales Managers (or AVPs) reporting to her: DJ Brennan, Jeff Rickens, Ben Robbins, and Ray Wile. (Ray Dep. pp. 8-9, Ex. A).[1] Each Sales Manager had approximately five Sales Supervisors reporting to them, and each Sales Supervisor managed a team of approximately ten mortgage consultants. Ms. Ray estimates that by late 2007 or early 2008, there were approximately 210 to 215 mortgage consultants working in the HLD department at the Polaris facility. (Ray Dep. p. 12).

Following her resignation on April 30, 2008, Ms. Doneyhue filed two separate charges of discrimination against Chase with the EEOC. In the first charge, Ms. Doneyhue alleged that Sales Manager Ray Wile discriminated against her on the basis of her gender by taking loans away from her that negatively impacted her pay and bonuses. (*See* Doneyhue Charge, filed July 8, 2008, Ex. B). In the second charge, Ms. Doneyhue alleged that Sales Manager Ray Wile sexually harassed her and that she was terminated in retaliation for complaining about perceived gender discrimination. (*See* Doneyhue Charge, filed August 22, 2008, Ex. C). Significantly, neither charge contained any "class" allegations, or any allegations of discrimination against "similarly situated" females or any other employees.

---

[1] While Ms. Ray still manages the HLD department, Sales Manager Ray Wile passed away in February 2010.

The EEOC investigated both charges, asking Chase to provide information about Ms. Doneyhue and others who reported to Sales Manager Ray Wile.[2]  Chase provided this information.  When the EEOC attempted to expand the scope of its investigation beyond Ray Wile (and those reporting to him), Chase legitimately questioned why, given the absence of any "class" allegations in Ms. Doneyhue's charges. (Newcomb Afd. ¶3, Tab 1, Ex. D).  The EEOC's response was to advise Chase that "Ms. Doneyhue provided the names of her former co-workers who she felt would provide relevant information about *her* employment concerns."  (emphasis added).  (Id.).  Chase refused to provide a broader scope of information, subject to a number of objections, and the EEOC never subpoenaed the information, or indicated that it would draw an adverse inference from Chase's failure to provide it.

Rather, on June 8, 2009, the EEOC issued its Determination finding probable cause to believe that Ms. Doneyhue "and a class of similarly situated female employees were repeatedly subjected to a hostile work environment based on their sex and were denied equal terms and conditions of employment." (*See* Determination, Ex. E).  The Determination did not define the class of "similarly situated female employees," and at no time during the investigation was Chase ever given the names of any "class" members or put on notice that allegations of misconduct were being levied by any other employees or against any other managers.  (Id.).

The EEOC engaged in conciliation with Chase, demanding specific monetary relief for Ms. Doneyhue and separate monetary relief for the "class."  However, the EEOC steadfastly refused to provide Chase with any information about the purported "class" upon whose behalf it sought relief, despite Chase's repeated requests for this information, and Plaintiff also denied Chase's repeated requests for a face-to-face meeting so that it could meaningfully participate in

---

[2] A detailed summary of the investigation will be set forth in Defendant's Motion for Partial Summary Judgment.

conciliation. (Newcomb Afd. ¶4, Tab 2). Given that the EEOC only gave Chase information about the allegations brought by Aimee Doneyhue, it responded appropriately to the EEOC's conciliation demand by only offering a monetary sum to resolve Ms. Doneyhue's charges. (Id.). The EEOC then unilaterally determined that conciliation was unsuccessful. (Id.).

**B.    Procedural History.**

On September 29, 2009, Plaintiff filed suit against Chase, pursuant to § 706 of Title VII, 42 U.S.C. §2000e-5. In the Complaint, Plaintiff alleged claims for gender discrimination, hostile work environment sexual harassment, and retaliation on behalf of complainant Aimee Doneyhue "and other similarly situated, current and former, female employees who were adversely affected by the practices." (Doc. #2). On January 18, 2010, Chase filed a Motion to Dismiss Plaintiff's Complaint because the allegations contained therein "were conclusory and factually deficient, thereby rendering Plaintiff's Complaint subject to dismissal under the United States Supreme Court's standard clarified in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)." (Doc. #6). In response, Plaintiff filed an Amended Complaint on January 27, 2010, which included more factual support for its string of legal conclusions. (Doc. #9).

For example, in Paragraph 7 of the Amended Complaint, Plaintiff clarified that its allegations were limited to Aimee Doneyhue and "similarly-situated female employees" who worked as mortgage consultants for Chase at the Polaris facility, the manner in which customer calls were routed to Ms. Doneyhue and these "similarly situated female employees," and the impact that routing had on their overall compensation. (Doc. #9, ¶7(a)-(b), (f)-(g)).[3] Plaintiff further clarified that its allegations of a sexually hostile work environment were related to Sales

---

[3] In its Motion to Compel, Plaintiff erroneous cites to the more generic allegations of Paragraph 7 of the original Complaint, not the more factually specific allegations of Paragraph 7 of the Amended Complaint. (See Motion to Compel, p. 1, n.1, Doc. #20-1).

{H2039228.8 }                                                   4

Manager Ray Wile's alleged conduct toward Ms. Doneyhue "and similarly situated female employees," and Ms. Doneyhue's alleged complaints about this perceived harassment to her male supervisor (Terry Ritter) and to human resources. (Id. at ¶7(c)-(e)). Finally, Plaintiff clarified that its allegations of retaliation were limited to Ms. Doneyhue. (Id. at ¶7(g)-(h)). On February 2, 2010, Chase filed its Answer to the Amended Complaint denying that it violated Title VII or engaged in any other unlawful conduct. (Doc. #10). Thereafter, the Parties began exchanging written discovery and Defendant began, but did not finish, the deposition of Ms. Doneyhue.[4]

On September 29, 2010, Plaintiff filed a Motion to Compel Responses to Discovery Requests ("Motion to Compel"), asking the Court to order Chase to "respond fully" to five of its interrogatories and 12 of its document production requests, asserting that Chase has "unilaterally restricted the scope of potential claimants" and prevented it from identifying whether other female employees have been subjected to, or witnessed, sex-based harassment. (Doc. #20-1, p. 1). In the discovery requests at issue, Plaintiff seeks broad discovery of the names, addresses, and telephone numbers (collectively referred to as "contact information") for all individuals employed in the HLD Sales Department since January 1, 2005; personnel files for some 50 individuals; and information about other complaints of sex-based "harassment, discrimination, mistreatment or retaliation" made by or against any current and/or former Chase employees in

---

[4] At Plaintiff's request, Defendant began deposing Aimee Doneyhue at 1:00 p.m. on Monday, August 30, 2010, to accommodate her full-time nursing school schedule, which Plaintiff stated required her attendance in class that morning. Defendant learned *for the first time* at the deposition that Ms. Doneyhue had completed her Monday morning course work and could have appeared earlier for deposition. (Doneyhue Dep. pp. 34-36, 306-309, Ex. F). At 7:52 p.m., before she had given 7 hours of actual testimony, Ms. Doneyhue excused herself from the deposition to contact her husband about child care for her children. She never returned to the deposition. Rather, counsel for the Parties waited for some 30 minutes before Ms. Doneyhue finally sent a text message to her counsel notifying her that she would not be returning. (Id.).

the HLD Department.[5] (Plaintiff's Interrogatory Nos. 2, 3, 5, 6; Plaintiff's Document Request Nos. 4, 5, 6, 7, 8, 9, 10) (Doc.#20-1, pp. 3-5). Plaintiff's Motion to Compel is untenable.

In arguing that Chase should be compelled to "fully respond" to its discovery requests, Plaintiff relies on the broad, generalized allegations of its original Complaint (Doc. #2) completely ignoring the more specific allegations in the Amended Complaint (Doc. #9) and the scope of the underlying investigation and conciliation that is the jurisdictional prerequisite to the filing of this lawsuit. Taking these things into consideration, Chase responded appropriately to Plaintiff's discovery requests by identifying and providing contact information for employees within Aimee Doneyhue's work group (all mortgage consultants and sales supervisors reporting to Sales Manager Ray Wile),[6] information about sex-based complaints made by or against anyone in Ms. Doneyhue's work group, and by producing over 1,700 pages of documents, including personnel records for 25 people who are arguably related to the allegations in Plaintiff's Amended Complaint. The Court should not condone Plaintiff's attempt to engage in a fishing expedition designed to improperly expand the scope of this litigation beyond what the EEOC investigated and conciliated before filing suit, and what it has actually alleged in the Amended Complaint. Accordingly, Defendant respectfully requests that the Court deny Plaintiff's Motion to Compel.

---

[5] Plaintiff originally sought contact information for <u>everyone</u> employed by Chase since January 1, 2005 and information about any complaints of sex-based "harassment, discrimination, mistreatment or retaliation" by <u>any</u> current and/or former Chase employee, without any geographic or temporal restrictions, and all documents related to such complaints. (*See* Plaintiff's Interrogatory No. 7 and Document Request Nos. 12, 15, Doc. #20-1, pp. 4-5). However, Plaintiff states in its Motion to Compel that it now seeks discovery just for the HLD Sales Department at the Polaris facility only. (Doc.#20-1, p. 2). As a result, Plaintiff's Motion to Compel Defendant to respond to Interrogatory No. 7 and Document Request Nos. 12 and 15 should be denied.

[6] By way of compromise, and <u>without</u> waiving any of its objections, Chase also produced contact information for employees in a separate work group (those reporting up to Sales Manager DJ Brennan) because Plaintiff identified, for the <u>first time</u> during discovery, that other employees had complaints about him. (*See* Ex. G).

### C. **Plaintiff's Overly Broad Discovery Requests.**

In its Motion to Compel, Plaintiff asks the Court to order Chase to provide information that far exceeds the scope of its investigation and conciliation efforts, and the allegations in its Amended Complaint, which are narrowly focused on Aimee Doneyhue's work as a mortgage consultant and on her management team. The overly broad discovery requests, which Defendant believes are still in dispute,[7] ask Defendant to do all of the following:

- Identify and provide personal contact information for all individuals who worked for HLD in sales and operations without any geographic or temporal restrictions. (*See* Plaintiff's Interrogatory Nos. 2, 3 and Document Request No. 4) (Doc. #20-3, 20-4).

- To produce personnel files for everyone identified by the Parties in their Initial Disclosures and for Sales Manager Jeff Rickens and Supervisor John Habanek. (*See* Plaintiff's Document Request Nos. 5 – 7) (Doc. #20-3).

- To produce documents related to any complaints made by female employees of the National Sales Ohio Group (or on their behalf) to Chase regarding, "but not limited to, mistreatment, harassment, discrimination and/or retaliation" from January 1, 2005 to the present. (*See* Plaintiff's Interrogatory No. 5 and Document Request No. 8) (Doc. #20-3, 20-4).

- To produce documents related to any allegations of "sex-based and/or retaliatory behavior or misconduct" made against 11 of Chase's employees.[8] (*See* Plaintiff's Interrogatory No. 6 and Document Request Nos. 9 – 10) (Doc. #20-3, 20-4).

---

[7] Given Plaintiff's representation that it does not seek entity-wide information but only information for the HLD Sales Department at the Polaris facility, Defendant presumes that its responses to Plaintiff's Interrogatory No. 7 and Document Requests Nos. 12 and 15 are not longer in dispute. While Plaintiff also contends that Defendant should be compelled to fully respond to Document Request Nos. 17, 18 and 20, there is no basis to compel Defendant's response. On August 10, 2010, Defendant sent a letter to Plaintiff withdrawing its objection to Document Request No. 20 and asserting that it would, if necessary, produce a privilege log to identify any documents withheld from production on the basis of attorney-client privilege in response to Document Requests Nos. 17 and 18. (*See* Newcomb Afd. ¶5, Tab 3). Accordingly, Defendant contends that its responses to these discovery requests are not properly before the Court.

[8] These 11 employees were: DJ Brennan, Josh Brandon, Joe Frank, Glenn Harris, Stephen Johnson, Cyndi Ray, Terry Ritter, Ben Robbins, Burton Smallwood, Ray Wile, Gil Winters, and Andre Young. Messrs. Harris, Johnson, Smallwood, Winters and Young are not employed in the HLD department at the Polaris facility.

Defendant properly objected to these overly broad discovery requests and produced information consistent with the scope of the EEOC's investigation, conciliation and the allegations in Plaintiff's Amended Complaint.

**D.    Defendant's Responses To Plaintiff's Overly Broad Discovery Requests.**

   *1.    Defendant Produced A Roster Of HLD Mortgage Consultants And Appropriate Contact Information.*

In response to Plaintiff's Interrogatory Nos. 2 and 3 and Document Request No. 4, wherein Plaintiff requested contact information for everyone employed in the HLD department since January 1, 2005, Defendant produced a list of <u>all</u> employees who reported to Sales Manager Ray Wile from May 2007 to the present—the relevant time period—with their contact information.[9] (Doc. #20-3, 20-4). Defendant drew this appropriate limitation based not only upon the scope of the EEOC's investigation and conciliation but upon the specific allegations of Paragraph 7 of the Amended Complaint, which relate solely to Aimee Doneyhue and her managers, Sales Supervisor Terry Ritter and Sales Manager Ray Wile. (Doc. #9, ¶7)

Counsel for the Parties consulted on August 17, 2010, about Defendant's discovery responses. In the interests of conciliation, and <u>without</u> waiving its objections to the overly broad scope of Plaintiff's discovery requests, Defendant agreed to supplement its responses by producing a list of <u>all</u> employees (both male and female) who worked as mortgage consultants at the Polaris facility from May 2007 to the present, regardless of management team.[10] Defendant

---

[9] Defendant objected to producing information for the time period earlier than the 300 days preceding the filing of Ms. Doneyhue's first charge with the EEOC (July 8, 2008), because such information is untimely and, therefore, not relevant or reasonably calculated to lead to the discovery of admissible evidence. *See e.g.,* <u>Kovacevich v. Kent State University</u>, 224 F.3d 806, 829 (6th Cir. 1999) (if plaintiff misses 300 day statute of limitations for filing a discrimination charge with the EEOC, he is forever precluded from bringing his claim in federal court).

[10] Plaintiff's assertion that Defendant has refused to "furnish a roster of the Sales Department workforce during the relevant time period (beyond the females reporting to Wile and Brennan)" is, therefore, inaccurate. (Doc. #20-1, pp. 1, 3, 5). (*See* Defendant's Supplemental Response to Plaintiff's Document Request No. 4, Ex. G).

maintained its legitimate objection to producing a broader scope of contact information because such information falls outside the scope of the EEOC's investigation, conciliation and the allegations in Plaintiff's Amended Complaint.[11]

### 2. *Defendant Produced Relevant Personnel Files.*

Defendant initially objected to producing *any* personnel files in response to Plaintiff's Document Request Nos. 5 and 6, but partially reconsidered its position in response to an August 2, 2010, letter from Plaintiffs' counsel. Thereafter, Defendant supplemented its response by producing personnel files for those in Aimee Doneyhue's management team (Sales Director Cyndi Ray, Sales Manager Ray Wile and Sales Supervisor Terry Ritter) and the personnel files of the other sales supervisors who reported to Mr. Wile (Joe Frank, John Habanek, James Hockenberry and Dennis Bolton). (*See* Defendant's Supplemental Response to Plaintiff's Document Request No. 5, Ex. H).

Defendant also went far beyond what was reasonably related to the scope of the investigation and conciliation and allegations in the Amended Complaint by providing responses to Plaintiff's Document Request No. 7. More specifically, Defendant provided personnel files for individuals whom Plaintiff identified <u>for the first time</u> in its Initial Disclosures as having been "subjected to Defendant's sex-based discriminatory treatment." (*See* Plaintiff's Initial Disclosures, Ex. I). This included personnel files for current and/or former HLD mortgage consultants who reported to Sales Manager Ray Wile: Jennifer Buoni, Aneka Burton, Sabrina DeRamus, Aimee Doneyhue, Elizabeth Haddock, Shari Lieb, Julie Morrison, Karen Otto, Kerrie Patton, Jane Pearson, and June Thaxton; personnel files for current and/or former HLD mortgage

---

[11] As previously noted, Defendant did produce contact information for mortgage consultants reporting up to Sales Manager DJ Brennan because Plaintiff identified, for the <u>first time</u> during discovery, that other employees had complaints about him. Defendant did this by way of comprise and without waiving any of its objections. (*See* Ex. G).

{H2039228.8}   9

consultants who did <u>not</u> report to Sales Manager Ray Wile: Andrea Atkinson, Elizabeth Burke, Marcella Chepp, Elizabeth DeAngelis; and personnel files for two individuals who did not even work in HLD: Renee Cianelli and Kimberly Farley. Notably, the EEOC did not identify any of these women as potential claimants during the investigation or conciliation process despite Chase's repeated request for this information. (Newcomb Afd. ¶4, Tab 2).

Defendant also produced a personnel file for Brian Hall, a former male mortgage consultant who reported to the same management team as Aimee Doneyhue (Sales Supervisor Terry Ritter and Sales Manager Ray Wile) and whom the EEOC identified, <u>for the first time during discovery</u>, as a potential witness. Defendant could not produce a personnel file for Sabrina Shiftman, an investigator employed by the EEOC, or for Tina Moyer because it could not identify any such employee, and the EEOC was never able to provide any further information to allow Chase to identify her. (*See* Defendant's Response to Plaintiff's Document Request No. 7) (Doc. #20-3). Defendant also did not produce a personnel file for Gail Smith because the EEOC stated that it was no longer pursuing any claims on her behalf in this action. (*See* Plaintiff's Answer to Defendant's Interrogatory No. 4, Ex. J).

Defendant appropriately objected to producing personnel files for the remaining individuals listed in the Plaintiff's Initial Disclosures because Plaintiff did not demonstrate that they have any connection to the allegations in the Amended Complaint, and for those in its Initial Disclosures who did not directly manage Aimee Doneyhue, are not alleged to have engaged in any unlawful conduct, did not participate in any challenged employee decisions, and are not even employed in the HLD department. (See Defendant's Initial Disclosures, Ex.

   3.   ***Defendant Produced Relevant Information About Other Complaints Of Sex-Based Discriminatory, Harassing Or Retaliatory Conduct.***

In response to Plaintiff's Interrogatory Nos. 5 and 6 and Document Request Nos. 8 - 10,

wherein Plaintiff sought information about any complaints of harassment, discrimination or retaliation made *against* any HLD employee and information about any complaints of harassment, discrimination or retaliation made *by* any HLD employee, Defendant provided information and documentation about complaints of sex-based discriminatory, harassing or retaliatory conduct made against Sales Manager Ray Wile or those employees reporting to him, or by any employee reporting to Mr. Wile. (Doc. #20-3, 20-4).  Again, Defendant drew this appropriate limitation based upon the scope of the EEOC's investigation and conciliation and the specific allegations in Paragraph 7 of Plaintiff's Amended Complaint, which relate to alleged misconduct by Aimee Doneyhue's management team (Supervisor Terry Ritter and Sales Manager Ray Wile). (Doc. #9, ¶7).  Defendant also provided this information despite the fact that the Amended Complaint makes clear that Plaintiff asserts a retaliation claim solely on behalf of Ms. Doneyhue, and no other employees. (Id. at ¶7(g)-(h)).  Given the appropriateness of Defendant's discovery responses, Plaintiff's Motion to Compel should be denied in its entirety.

### III.  LAW AND ARGUMENT

**A. Plaintiff Is Not Entitled To Broad Discovery Of Contact And Complaint Information Beyond What It Investigated, Conciliated And Alleged In the Amended Complaint.**

The EEOC's demand for contact and complaint information for the entire Sales Department is without merit.  The law is well-established that "the EEOC may only bring a § 706 lawsuit to remedy allegations of discrimination it investigates, finds reasonable case to believe are true and attempts in good-faith to conciliate." EEOC v. CRST Van Expedited, Inc., No. 07-CV-95-LRR, 2009 WL 2524402 at *14 (N.D.Iowa Aug. 13, 2009) (Ex. K). *See also* EEOC v. KECO Indus., Inc., 748 F.2d 1097, 1102 (6th Cir. 1984) ("there must be an investigation and conciliation of a claim before it is litigated."); EEOC v. Outback Steak House

of Fla., Inc., 520 F.Supp.2d 1250, 1262 (D.Colo. 2007) ("[T]he finding that the EEOC is not closely bound to the specifics of the original charge does not mean that the EEOC may bring a civil action regarding any discrimination it uncovers in the course of an investigation. Instead[,] . . . the EEOC must give adequate notice to a defendant-employer of the nature of the charges against it, as well as an opportunity to resolve all charges through conciliation."). In other words, the EEOC's case is confined to the scope of what it investigated and conciliated.

The record reveals that the EEOC's investigated Aimee Doneyhue's individual allegations of discrimination, harassment and retaliation as set forth in her charges. (*See* Exs. B, C). Those allegations were limited to her work as a mortgage consultant and her management team, specifically Sales Manager Ray Wile. The EEOC never informed Chase that it was investigating claims of discrimination against any other employees or managers, nor did it ever attempt to conciliate such claims. (Newcomb Afd. ¶4, Tab 2).

Moreover, the allegations in the Amended Complaint focus on alleged discrimination against Ms. Doneyhue and the alleged conduct of her management team (Sales Manager Ray Wile and Sales Supervisor Terry Ritter). (Doc. #9, ¶7(a)-(c)). Plaintiff does not allege anywhere in the Amended Complaint that the purported manipulation of calls and loans went beyond Ms. Doneyhue's work group, or that Ms. Doneyhue or "similarly situated" female employees were harassed by anyone other than Sales Manager Ray Wile. (Id.). For these reasons, the EEOC is not entitled to obtain contact and complaint information for anyone beyond Aimee Doneyhue or other employees reporting to her same management team. As courts in the Seventh Circuit have held, there is a clear distinction between "facts gathered during the scope of an investigation and facts gathered during the discovery phase of an already-filed lawsuit." EEOC v. Jillian's of Indianapolis, IN, Inc., 279 F.Supp.2d at 974, 981 (S.D.Ind. 2003). The EEOC may not use

discovery in a resulting lawsuit "as a fishing expedition" to uncover more violations. EEOC v. Harvey L. Walner & Associates, 91 F.3d 963, 971 (7th Cir. 1996).

Plaintiff's reliance on EEOC v. Yellow Transportation, Inc., No. 09-C-7693, 2010 WL 2891973 (N.D. Ill. July, 2010) (Ex. L), to support is argument that Chase must be compelled to produce contact information for everyone who worked in the Sales Department since January 1, 2005 is misplaced. (Doc. #20-1, p. 7). There, the complaint filed by the EEOC included broad allegations of mistreatment against Black employees as a class, including subjecting them to "hangman's nooses, racially derogatory comments, racial epithets, and racist graffiti," assigning them to "more difficult and time consuming work," subjecting them to "more frequent and greater discipline . . and greater scrutiny and more restrictive work rules," and assigning them to "lower paying and more restrictive work rules." (*See* Yellow Transport Complaint, Ex. M, ¶14). The complaint did not limit the class of Black employees to those holding a specific job. Yellow Transportation, 2010 WL 2891973 at *1.

Here, in contrast, the Amended Complaint filed by the EEOC in response to Defendant's Motion to Dismiss does not contain broad allegations of mistreatment of female employees as a class, but more narrow allegations regarding mistreatment of mortgage consultant Aimee Doneyhue (and similarly situated female employees)[12] by one person—Sales Manager Ray Wile. (Doc. #9, ¶7). Given this significant factual difference, Yellow Transport is inapplicable and provides no basis for the Court to order the broad discovery Plaintiff seeks.

---

[12] Plaintiff's contention that it does not have to establish a parity of circumstances between Aimee Doneyhue and the "similarly situated" female employees for whom it seeks relief is not supported by the cases it cites as neither defines "similarly situated" in the context of a § 706 action. *See e.g.,* EEOC v. Burlington Med. Supplies, Inc., 536 F.Supp.2d 647, 655-656 (E.D.Va. 2008 (court did not define "similarly situated" but simply held that a § 707 "pattern or practice" hostile work environment claim brought by the EEOC on behalf of the charging party "and all similarly situated female employees" could go to trial, notwithstanding the subjective nature of the claim); EEOC v. Nalbandian Sales, Inc., 36 F.Supp.2d 1206, 1208, 1212 (E.D. Cal. 1998) (court denied motion to dismiss and held that EEOC could assert a third-party retaliation clam under Title VII on behalf of charging party and "other similarly situated persons" without defining the term "similarly-situated.").

{H2039228.8}    13

The scope of discovery in a § 706 action, like this one, is driven by the scope of the Amended Complaint which, in turn, is dependent upon the scope of the underlying charge, investigation, and conciliation efforts.  See Jillian's, *supra*, 279 F.Supp.2d at 974, 979 ("[T]he eventual lawsuit must arise from the 'scope of the investigation.'  Each step along the administrative path—from charge to investigation and from investigation to lawsuit—must grow out of the one before it.").  Plaintiff is not entitled to obtain discovery beyond what it investigated and conciliated and what is alleged in the Amended Complaint.

A court in the Sixth Circuit recently dismissed the EEOC's § 706 action on behalf of individuals who were not identified during the investigation and conciliation because the EEOC failed to follow Title VII's integrated, multistep enforcement procedure before filing suit, noting that "[t]he EEOC literally sued first and began asking questions only years later.  Title VII simply does not permit the EEOC to callously disregard its clear pre-suit mandates, and summary judgment should be granted."  EEOC v. Cintas Corp., Nos. 04-40132, 06-12311, 2010 WL 3733978 (E.D. Mich. Sept. 20, 2010) (Ex. N).  In its to be filed Motion for Partial Summary Judgment, Defendant will ask the Court to hold the EEOC to its pre-suit obligations and to prevent the EEOC's blatant "attempt[] to perfect and end-run around Title VII's statutory pre-requisites to suit."  CRST, *supra*, 2009 WL2524402 at *16 (citations omitted).  The EEOC should not be permitted to engage in the same inappropriate conduct in this case by seeking discovery that goes beyond the EEOC's investigation and conciliation.  Accordingly, Defendant respectfully requests that the Court deny Plaintiff's Motion to Compel it to produce additional contact and complaint information beyond what it has already produced for Aimee Doneyhue and those reporting to Sales Manager Ray Wile, which corresponds to what the EEOC actually investigated and conciliated before filing this suit.

B. **Plaintiff Is Not Entitled To Discover Personnel Files For Individuals Who Have No Connection To The Allegations In The Amended Complaint.**

Plaintiff contends that it is entitled to discover personnel records for everyone identified by the Parties in their Initial Disclosures. Defendant has already gone beyond what the EEOC is reasonably entitled to discover by producing personnel files for Ms. Doneyhue and 11 other current and/or former HLD employees who reported to Sales Manager Ray Wile; personnel files for four current and/or former HLD employees who did not report to Mr. Wile; and personnel files for two current and/or former employees who are not employed in the HLD department. Defendant has also produced personnel files for the relevant managers in Aimee Doneyhue's work group (Site Director Cyndi Ray, Sales Manager Ray Wile, and the sales supervisors who reported to Mr. Wile—Terry Ritter, Joe Frank, John Habanek, Jim Hockenberry, and Dennis Bolton). Plaintiff's assertion that Defendant should be compelled to produce personnel files for 22 additional employees is not justified by the allegations in the Amended Complaint nor the scope of the investigation and conciliation.[13]

The Sixth Circuit has recognized that non-party employees have a legitimate privacy interest in their personnel files. *See* Knoll v. AT&T, 176 F.3d 359, 365 (6th Cir. 1999) ("It is clear that defendants had a valid interest in the privacy of nonparty personnel files and that it was within the district court's powers to grant the challenged protective order."); Miller v. Fed. Express Corp., 186 F.R.D. 376, 384 (W.D. Tenn. 1999) (acknowledging extremely private nature of personnel files). Given this legitimate privacy interest and the relevancy limitations imposed

---

[13] These 22 people include HLD National Sales Director Michael Rogan (Cyndi Ray's boss); HLD Sales Managers DJ Brennan and Ben Robbins; HLD Sales Supervisor Josh Brandon (who reports to DJ Brennan); current and or former HLD mortgage consultants Christopher Condon, Shane Niemla, John Oatts, George Taylor, and Gavin Rogers; HLD administrate assistants Diane Buchanan and Julie Syrus; Command Center Director Brian Grossberg; Marketing Manager Michael Simmons; Employee Relations employees Linda Brinker, Leonore Chester, Debra Juntunen, and Shelia Sentino; Human Resources employee Burton Smallwood; and non-HLD employees Gil Winters, Andre Young, Glenn Harris, Stephan Johnson. (See Plaintiff's Initial Disclosures, Ex. I and Defendant's Initial Disclosures, Ex. O).

upon discovery by Civil Rule 26(b)(1), courts in the Sixth Circuit required a compelling showing of relevance before ordering the production of personnel files and, even then, have limited discovery of personnel files to those non-party employees who engaged, or played an important role, in the employment decision or incident giving rise to the lawsuit.  *See* Burzynski v. Cohen, 264 F.3d 611, 621 (6th Cir. 2001) (finding no abuse of discretion where district court denied plaintiff's motion to compel production of personnel files for individuals selected for positions for which he applied); Miller, *supra*, 186 F.R.D. at 385 (ordering production of portions of decision-makers' personnel files relating to complaints or discipline).

Other federal courts have imposed the same requirements before ordering the production of personnel files.  *See e.g.,* Onwuka v. Fed. Express Corp., 178 F.R.D. 508, 517 (D. Minn. 1997) ("We think the proper balance, between the privacy interests of non-party third persons, and the discovery interests of a party litigant, is to assure that only those portions of the pertinent personnel files, which are clearly relevant to the parties' claims, are open to disclosure and, then, subject to an appropriate Confidentiality Order as the circumstances require."); Raddatz v. Standard Register Co., 177 F.R.D. 446, 447-448 (D. Minn. 1997) ("[T]he very act of disclosing an employee's sensitive and personal data is highly, and frequently, an unnecessarily intrusive act—whether or not that disclosure is governed by the terms of a Confidentiality Order. . . . [Thus], before a Court compels the production of non-party personnel files, it should first be satisfied that the information in those files is, indeed, relevant.").

None of the cases upon which Plaintiff relies supports its intrusive and overly broad demand for non-party employee personnel files.  To the contrary, those cases cited by Plaintiff that actually contain a substantive discussion of the discoverability of personnel files all

recognize that the limitations that must be imposed upon such discovery.[14]  *See e.g.,* Eckhardt v. Bank of Am., N.A., Civil No. 3:06CV512-H, 2008 WL 111219, at *7 (W.D.N.C. Jan. 9, 2008) (Ex. P) (permitting discovery of personnel files for only those employees whose action or inaction has a direct bearing on the parties' claims or defenses); In re Complaint of B & H Towing, Inc., No. 6:05-cv-00233, 2006 WL 1728044, at *8 (S.D.W. Va. June 23, 2006) (Ex. Q) (ordering production of performance-related documents in personnel files of individuals directly connected to the incident at the heart of the lawsuit); McCoo v. Denny's Inc., 192 F.R.D. 675, 687 (D. Kan. 2000) (permitting discovery of personnel files for employees who are "alleged to have engaged in the discrimination or harassment at issue or played an important role in the employment decision or incident that gave rise to the lawsuit"); Ragge v. MCA/Universal Studios, 165 F.R.D. 601, 603-605 (C.D. Cal. 1995) (ordering production of named plaintiffs' personnel files only).

  Nowhere in Plaintiff's Motion to Compel does it offer any justification for why it should be permitted to broadly discover personnel files for 22 non-party employees where those employees did not directly manage Aimee Doneyhue, are not alleged in the Amended Complaint to have engage in any unlawful conduct, did not participate in any challenged employment decision, or are not even employed in the HLD department.  The mere fact that some of these individuals may be called as witnesses at trial does not justify production of their personnel files. *See* McCoo, *supra*, 192 F.R.D. at 687 ("merely because a person may be called as a witness at trial does not justify disclosure of his/her personnel file."); Haselhorst v. Wal-Mart Stores, Inc., 163 F.R.D. 10, 11 (D.Kan. 1995) (holding same).  Given Plaintiff's failure to demonstrate the required relevance of these non-party employees to the instant action and the legitimate privacy

---

[14] Plaintiff's reliance upon West v. Tyson Foods, Inc., 374 Fed. Appx. 624 (6th Cir. 2010) and Johnson v. Morris, 903 F.2d 966 (4th Cir.1990) is misplaced because neither case deals directly with the issue of the discovery of personnel files.

interest non-party employees have to their personnel records, the Court should deny Plaintiff's Motion to Compel production of personnel files for these 22 non-party employees.

### IV.  **CONCLUSION**

As demonstrated above, Plaintiff's overly broad discovery requests blatantly disregard the scope of its pre-suit investigation and conciliation efforts, the narrow allegations in its Amended Complaint, and seek personnel files of individuals entirely unrelated to the allegations in the Amended Complaint.  For these reasons, Plaintiff's Motion to Compel should be denied. Defendants also respectfully move the Court to stay its ruling on Plaintiff's Motion to Compel until the Court has ruled on Defendant's anticipated Motion for Partial Summary Judgment, which may provide guidance to the Court in resolving this discovery dispute.

    Respectfully submitted,
SCHOTTENSTEIN, ZOX & DUNN


**/s/ Angelique Paul Newcomb**
Angelique Paul Newcomb (0068094)
250 West Street
Columbus, Ohio 43215-2538
(614) 462-2257 (telephone)
(614) 462-5135 (facsimile)
E-mail:  anewcomb@szd.com
*Trial Attorney for Defendant*

OF COUNSEL:

Eve M. Ellinger (0073742)
SCHOTTENSTEIN, ZOX & DUNN
250 West Street
Columbus, Ohio 43215-2438
(614) 462-5037 (telephone)
(614) 462-5135 (facsimile)
E-mail:  eellinger@szd.com

{H2039228.8 }    18

Mark S. Dichter (admitted *pro hac vice*)
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
(215) 963-5291 (telephone)
(215) 963-5001 (facsimile)
E-mail:  mdichter@morganlewis.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of October 2010, a copy of the foregoing *Defendant's Memorandum In Opposition to Plaintiff's Motion to Compel Discovery Responses*, was filed electronically and served via the Court's electronic notification system upon the following:

>Debra M. Lawrence, Esq.
>Acting Regional Attorney
>EEOC
>10 S. Howard Street, 3rd Floor
>Baltimore, Maryland 21201
>
>David J. Staudt, Esq.
>Equal Employment Opportunity Commission
>801 Market Street, Suite PH
>Philadelphia, PA 19106
>
>Solvita A. McMillan, Esq.
>EEOC
>Cleveland Field Office
>AJC Federal Building—Suite 3001
>1240 East 9th Street
>Cleveland, OH  44199
>
>*Attorneys for Plaintiff*

>>/s/Angelique Paul Newcomb
>>Angelique Paul Newcomb