IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,**

        **Plaintiff,**

    **vs.**                                Civil Action 2:09-CV-864
                                                 Judge Smith
                                                 Magistrate Judge King

**JP MORGAN CHASE BANK, N.A.,**

        **Defendant.**


<u>**OPINION AND ORDER**</u>

      Plaintiff asserts that defendant subjected female employees, as a class, to terms and conditions that differed from those of similarly situated male employees, in violation of Title VII, 42 U.S.C. § 2000e-5, as amended by 42 U.S.C. § 1981a.  This matter is before the Court on *Plaintiff's Motion to Compel Responses to Discovery Responses*, Doc. No. 20 ("*Motion to Compel*") and the request of defendant JP Morgan Chase Bank, N.A. ("Chase") for a stay pending resolution of its motion for partial summary judgment, *Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel Responses to Discovery Requests and Defendant's Motion for a Stay Pending Resolution of Its Motion for Partial Summary Judgment*, Doc. No. 23 ("*Motion to Stay*").[1]

**I.**    **BACKGROUND**

      In April 2007, Aimee Doneyhue began working as a mortgage

---

[1]As indicated *supra*, Chase filed a document that combined both a substantive opposition to the *Motion to Compel* and defendant's own independent motion.  Doc. No. 23.  Chase is **ADVISED** that presenting a motion as a separate filing, rather than as a combined filing, is the better practice because doing so (1) ensures that the motion appears on the Court's pending motions list, and (2) eliminates confusion during the briefing period.

consultant/home loan sales originator in the sales department of Chase's Polaris Park, Columbus, Ohio facility ("Sales Department" and "the Polaris facility").  *Amended Complaint*, Doc. No. 9, ¶ 7; *Exhibit 1*, attached to *Motion to Compel*.[2]  The Sales Department was managed by Cynthia Ray, the Sales Director of that department since 2005.  *Ray Depo.*, pp. 8-9.  Four sales managers (also known as assistant vice presidents or "AVPs"), DJ Brennan, Jeff Rickens, Ben Robbins and Ray Wile, reported to Ms. Ray.  *Id.*; *Memo. in Opp.*, p. 2.  Approximately five sales supervisors reported to each sales manager.  *Id.*  Each sales supervisor managed approximately ten mortgage consultants.  *Id.*[3]  Ms. Doneyhue reported to Terry Ritter, a sales supervisor, who in turn reported to Mr. Wile,[4] a sales manager,[5] who in turn reported to Ms. Ray.  *Exhibit 1*, p. 2, and *Exhibit 2*, p. 2, attached to *Motion to Compel*; *Ray Depo.*, pp. 8-9.

On May 2, 2008, Chase discharged[6] Ms. Doneyhue.  *Amended*

---

[2] At other times, the parties reference the "Polaris call center" or "Home Loan Direct department" in Columbus.  *See*, *e.g.*, *Motion to Compel*, p. 1; *Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel Responses to Discovery Requests and Defendant's Motion for a Stay Pending Resolution of Its Motion for Partial Summary Judgment*, Doc. No. 23 ("*Chase's Memo. in Opp.*"), p. 2; *Deposition of Cynthia Ray*, attached thereto as *Exhibit A* ("*Ray Depo.*"), p. 9.  The Court understands all of these references to relate to the same department.

[3] As of late 2007 or early 2008, there were approximately 210 to 215 mortgage consultants in the Sales Department of the Polaris facility.  *Ray Depo.*, p. 12.

[4] Chase represents that Mr. Wile passed away in February 2010.  *Memo. in Opp.*, p. 2 n.1.

[5] Plaintiff Equal Employment Opportunity Commission ("EEOC") at times refers to Mr. Wile as a "supervisor" and as a "manager."  *See*, *e.g.*, *Amended Complaint*, ¶ 7(c) (manager); *Motion to Compel*, p. 1 (supervisor).

[6] Chase takes the position that Ms. Doneyhue voluntarily resigned from her position.  *Exhibit 1*, p. 2, attached to *Memo. in Opp.*

*Complaint*, ¶ 7(h). Thereafter, she filed two separate charges of discrimination with the Ohio Civil Rights Commission ("OCRC"). *Exhibits B* and *C*, attached to *Memo. in Opp.* First, on June 27, 2008, she alleged that

> [t]hroughout my employment [with defendant] I have been subject to different terms and conditions of employment due to my sex (female). My reason for this belief is that my supervisor, Ray Wile, has consistently taken away loans from me that effect [sic] my pay and bonus, while other similarly situated male employees are given my loans and not treated the same as myself. I have also never received a loan that was taken away from a similarly situated employee as it has done to me.
>
> I have been subjected to different terms and conditions of employment due to my sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII).

*Exhibit B*, attached to *Chase's Memo. in Opp.*

On August 18, 2008, Ms. Doneyhue filed a second charge, providing additional details of alleged discrimination involving Ms. Ray and Mr. Wile:

> From about January 8, 2008 to May 2, 2008 I was subjected to harassment by Ray Wile, Assistant Vice President, which consisted of but is not limited to: Mr. Wile calling me an "idiot" and telling me I was a "black eye for Chase," taking me out of the call queue, and telling me I couldn't go to Cindy Ray, Vice President, if I had problems or concerns. On May 2, 2008, I was terminated from my position as a Mortgage Consultant.
>
> I complained to Burton Smallwood, Human Resources Manager, about being discriminated against because of my sex. On May 2, 2008, Mr. Smallwood told me that they received word that I had resigned. I told him that I hadn't. On [or] about April 29, 2008 Mr. Wile, my supervisor, asked me if I was looking for other positions in other departments because he knew I was unhappy and I have a lot of kids. He further stated it would probably be best if I resigned. I told him absolutely not. I learned that an e-mail was circulated to staff stating that I left the company to pursue opportunities outside of Chase. Mr. Wile told me not to complain to Ms. Ray because she doesn't like me.

*Exhibit C*, attached to *Memo. in Opp.*

Thereafter, Chase denied the allegations and the EEOC conducted an investigation.  *See*, *e.g.*, *Exhibit E*, attached to *Chase's Memo. in Opp.*; *Tab 1*, attached to *Affidavit of Angelique Paul Newcomb*, attached as *Exhibit D* to *Chase's Memo. in Opp.*; *Exhibit 5*, attached to *Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Compel Responses to Discovery Requests and Plaintiff's Opposition to Defendant's Motion for a Stay Pending Resolution of Its Motion for Partial Summary Judgment*, Doc. No. 32 ("*EEOC's Reply*").

On June 8, 2009, the EEOC issued a letter of determination ("LOC"), concluding that Chase had violated Title VII:

> After a thorough review of the record, the evidence reveals Charging Party [Ms. Doneyhue] and a class of similarly situated female employees were repeatedly subjected to a hostile work environment based on their sex and were denied equal terms and conditions of their employment.  Respondent [Chase] failed to take reasonable care to prevent and correct the harassment.  Furthermore, Charging Party was performing at a satisfactory level and she was discharged in retaliation for her protected activity.  Based on the foregoing, I have determined that the available evidence establishes that Respondent's actions violate Title VII.

*Exhibit E*, attached to *Chase's Memo. in Opp*.

The EEOC further advised Chase that the EEOC would attempt to resolve the matter through informal conciliation:

> Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation.  Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter.  In this regard, conciliation of this matter has now begun.  Please be advised that upon receipt of this finding, any reasonable offer to resolve this matter will be considered.  The Commission is seeking an amount up to three hundred thousand dollars for compensatory damages and/or punitive damages and actual monetary costs incurred by the Charging Party and all aggrieved individuals. . . . Again, the Commission is postured to consider any reasonable offer during this period.  If any offer has not been previously submitted, the Responded is requested to accept, reject or

>submit a counteroffer to the enclosed conciliation agreement concerning Charging Party and to do so within ten (10) days of the receipt of this letter.

*Id*.

The parties were unable to informally resolve their dispute on the administrative level. Consequently, the EEOC filed the original complaint,[7] Doc. No. 2, on September 29, 2009, pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. 1991, § 1981a. *Id*. at ¶ 1. The EEOC subsequently filed the *Amended Complaint*, alleging, *inter alia*, that Chase engaged in unlawful employment practices, which "deprive[d] Aimee Doneyhue and similarly situated current and former female employees who worked at Defendant's Polaris Park facility during the period from July 8, 2006 to the present, of equal employment opportunities, on the basis of sex and Doneyhue's engaged in conduct protected by Title VII." *Amended Complaint*, ¶¶ 7-8. The EEOC seeks injunctive and monetary relief on behalf of Ms. Doneyhue and the putative class described *supra*.

At the initial pretrial conference, the Court set a case schedule, establishing deadlines for disclosure of primary and rebuttal expert witnesses (March 11, 2011, and May 11, 2011, respectively), for discovery (June 11, 2011) and for filing motions for summary judgment (July 11, 2011). *Preliminary Pretrial Order*, Doc. No. 17.

---

[7] The EEOC initially filed suit in the United States District Court for the Southern District of Ohio, Western Division, and the action was transferred to this seat of court. *Order*, Doc. No. 3.

5

The EEOC served its initial discovery requests, seeking, *inter alia*, information relating to the Sales Department in the Polaris facility. *Exhibits 1* and *2*, attached to *Motion to Compel*. Chase objected to the scope of the EEOC's requests and restricted its responses to employees similarly situated to Ms. Doneyhue, *i.e.*, mortgage consultants who report to Mr. Wile. *Id*. The parties were unable to resolve their dispute extrajudicially, and the EEOC filed its *Motion to Compel*.

## II.  *MOTION TO STAY*

Chase asks this Court to stay consideration of the *Motion to Compel* pending resolution of Chase's motion for partial summary judgment, Doc. No. 27. *Motion to Stay; Defendant's Reply Brief in Support of Its Motion to Stay Pending Resolution of Its Motion for Partial Summary Judgment (Doc. 23)*, Doc. No. 40 ("*Chase's Reply*"). Chase argues that the EEOC's discovery requests are overbroad because they relate to putative class members who did not report to Mr. Wile and who have claims that Chase now seeks to dismiss. *Id*. As a basis for staying discovery relating to (and dismissing) the claims of these putative class members, Chase complains that the EEOC failed to: (1) investigate these claims during the administrative proceedings; (2) inform Chase that the scope of the EEOC administrative investigation included claims by women who did not report to Mr. Wile; and/or (3) make a reasonable effort to conciliate such claims with Chase. The EEOC opposes Chase's request, arguing that Chase's proffered reasons do not warrant a stay and that the requested stay will result in wasted time.

"Matters of docket control and conduct of discovery are committed to the sound discretion of the district court." *In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996) (internal quotation marks omitted). *See also ACLU of Ky. v. McCreary County*, 607 F.3d 439, 451 (6th Cir. 2010) ("[A] district court has broad discretion to manage its docket."). In the case *sub judice*, the Court has already established a discovery deadline of June 11, 2011. *Preliminary Pretrial Order*. Defendant's motion for partial summary judgment, Doc. No. 27, was filed on November 2, 2010 and is not yet at issue. Granting the requested stay is therefore disruptive to the case schedule, which will likely have to be extended if the District Judge denies defendant's motion for partial summary judgment. Moreover, this case is already more than one year old. In considering the *Motion to Stay*, the undersigned has reviewed the memoranda relating to the motion for partial summary judgment, Doc. Nos. 27 and 37, and case authority, *e.g.*, *Equal Employment Comm'n v. Keco Indus., Inc.*, 748 F.2d 1097 (6th Cir. 1984). The Court is not persuaded that Chase's arguments warrant a stay of discovery as to the putative class and disruption of the current pretrial schedule. The Court therefore concludes that its discretion is better exercised in denying the requested stay. *Cf. In re Air Crash Disaster*, 86 F.3d at 516.

### III. *MOTION TO COMPEL*

The EEOC seeks an order compelling Chase to "respond fully" to plaintiff's Request for Document Nos. 4, 5, 6, 7, 8, 9, 10, 12, 15, 17, 18, 20 and plaintiff's Interrogatory Nos. 2, 3, 5, 6 and 7 (collectively, "disputed discovery requests"). *Motion to Compel*. Determining the proper scope of discovery falls within the broad

discretion of the trial court.  *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).  Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"  Fed. R. Civ. P. 26(b)(1).  Accordingly, "[t]he scope of examination permitted under Rule 26(b) is broader than that permitted at trial.  The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence."  *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-01 (6th Cir. 1970).

After reviewing the *Motion to Compel* and related memoranda, the Court understands the issue to be to what extent, at this juncture, Chase should respond to the disputed discovery requests.[8]  Chase previously limited its responses to information relating to similarly situated employees within Ms. Doneyhue's work group, *i.e.*, mortgage consultants reporting to Mr. Wile.  That limitation was based on Chase's belief that the disputed requests were overly broad and amounted to a fishing expedition, a belief which also served as the basis for Chase's request to stay.  However, the claims presented by plaintiff are not limited to those female employees who report to Mr. Wile.  For the reasons stated *supra*, the Court concludes that those claims are not so lacking in merit as to justify the delay attendant to a stay of discovery relevant to those claims. Under these circumstances, the EEOC is entitled to proceed on discovery relevant

---

[8] If any party believes that the Court has misunderstood the extent of the discovery dispute and that the disputed discovery requests relate to matters beyond the limited scope of Chase's responses discussed *infra*, that party should so advise the Court.

8

to all of its pending claims.

**WHEREUPON**, *Plaintiff's Motion to Compel Responses to Discovery Responses*, Doc. No. 20, is **GRANTED** and *Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel Responses to Discovery Requests and Defendant's Motion for a Stay Pending Resolution of Its Motion for Partial Summary Judgment*, Doc. No. 23, is **DENIED**.  Chase is **ORDERED** to supplement its responses to plaintiff's Request for Document Nos. 4, 5, 6, 7, 8, 9, 10, 12, 15, 17, 18, 20 and plaintiff's Interrogatory Nos. 2, 3, 5, 6 and 7, within fourteen (14) days of the date of this *Opinion and Order*.

December 10, 2010　　　　　　　　　　　　*s/Norah McCann King*
　　　　　　　　　　　　　　　　　　　　　Norah M$^c$Cann King
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge