UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

                                    **Case No. 2:09-cv-864**
                                    **Judge Smith**
v.                                **Magistrate Judge King**

JP MORGAN CHASE BANK, N.A.,

        Defendant.

## OPINION AND ORDER

      This matter is before the Court on the Motion for Partial Summary Judgment of Defendant JPMorgan Chase Bank, N.A. (Doc. 27).  This motion is fully briefed and ripe for disposition.  For the reasons that follow, the Court **DENIES** Defendant's Motion for Partial Summary Judgment.

**I.**       **Background**

      In April 2007, Aimee Doneyhue began working as a mortgage consultant/home loan sales originator in the sales department of Defendant's Polaris Park, Columbus, Ohio facility ("Sales Department" and "the Polaris facility").  The Sales Department was managed by Cynthia Ray, the Sales Director of that department since 2005.  Four sales managers (also known as assistant vice presidents or "AVPs"), DJ Brennan, Jeff Rickens, Ben Robbins and Ray Wile, reported to Ms. Ray.  Approximately five sales supervisors reported to each sales manager.  Each sales supervisor managed approximately ten mortgage consultants.  Ms. Doneyhue reported to Terry Ritter, a sales supervisor, who in turn reported to Mr. Wile, a sales manager, who in turn reported to Ms.

Ray.  Ms. Doneyhue worked in the Sales Department until she either voluntarily resigned or was

discharged (the nature of her exit is disputed).

In June 2008, Ms. Doneyhue filed the first of her two individual charges of discrimination

with Plaintiff.  By the first charge, Ms. Doneyhue alleged the following:

> [t]hroughout my employment [with defendant] I have been subject to different
> terms and conditions of employment due to my sex (female).  My reason for this
> belief is that my supervisor, Ray Wile, has consistently taken away loans from me
> that effect [sic] my pay and bonus, while other similarly situated male employees
> are given my loans and not treated the same as myself.  I have also never received
> a loan that was taken away from a similarly situated employee as it has done to me.
>
> I have been subjected to different terms and conditions of employment due to my
> sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended
> (Title VII).

(Doc. 27-5).  In August 2008, Ms. Doneyhue filed her second charge, which stated as follows:

> From about January 8, 2008 to May 2, 2008 I was subjected to harassment by Ray
> Wile, Assistant Vice President, which consisted of but is not limited to:  Mr. Wile
> calling me an "idiot" and telling me I was a "black eye for Chase," taking me out
> of the call queue, and telling me I couldn't go to Cindy Ray, Vice President, if I
> had problems or concerns.  On May 2, 2008, I was terminated from my position as
> a Mortgage Consultant.
>
> I complained to Burton Smallwood, Human Resources Manager, about being
> discriminated against because of my sex.  On May 2, 2008, Mr. Smallwood told
> me that they received word that I had resigned.  I told him that I hadn't.  On [or]
> about April 29, 2008 Mr. Wile, my supervisor, asked me if I was looking for other
> positions in other departments because he knew I was unhappy and I have a lot of
> kids.  He further stated it would probably be best if I resigned.  I told him
> absolutely not.  I learned that an e-mail was circulated to staff stating that I left the
> company to pursue opportunities outside of Chase.  Mr. Wile told me not to
> complain to Ms. Ray because she doesn't like me.

(Doc. 27-6).

Defendant denied the allegations and Plaintiff conducted an investigation.  In October

2008, Sabrina Shifman, a Senior Investigator employed by Plaintiff, was assigned the task of

investigating the two charges of discrimination filed by Ms. Doneyhue.  On October 16, 2008,

Ms. Shifman communicated Ms. Doneyhue's individual settlement demand to Debra Juntunen,

who is employed as an Employee Relations Manager/Vice President for Defendant, and noted that

if the matter was not resolved, she would forward a request for information and then seek an on-

site investigation.  The charges were not resolved by settlement, and Ms. Shifman contacted Ms.

Juntunen to request more information, including contact information for employees reporting to

Mr. Wile.

While attempting to obtain information from Defendant, Ms. Shifman was also gathering

information from Ms. Doneyhue and witnesses identified by her.  By the spring of 2009, Ms.

Shifman had contacted Ms. Doneyhue multiple times, and she had contacted over 30 other

individuals by letter, phone, and/or email.  According to Ms. Shifman, "[s]everal of these

witnesses corroborated Doneyhue's allegations that there was a sexualized work environment in

the sales department overseen by Cyndi Ray, and that it appeared to them that managers could

and would manipulate the incoming customer calls to favor younger, male employees."  (Shifman

Decl., ¶ 8).

On December 11, 2008, Defendant responded to a request for information ("RFI") from

Plaintiff that asked Defendant to provide the "name, sex, job title, last known home address and

telephone number" of "all current and former employees that have worked on Ray Wile's team"

from 2006 to the time of the request.  (Ex. 7 to Shifman Decl.).  Defendant objected to the scope

of the RFI, but agreed to produce the identification number, sex, and job title for all current

employees and the name, sex, job title, date of termination, reasons for termination, last known

home address and telephone number for former non-management employees, who were part of

"Ray Wile's team" from May 7, 2006, to the time of the request.  (*Id.*).

On December 15, 2008, Ms. Shifman emailed Ms. Juntunen asking for a reconsideration of the refusal to fully comply with the RFI.  Ms. Shifman stated that the "request seeks contact information for the employees who work for Ray Wile, the same department for which Charging party was employed.  Moreover, the Charging party is alleging class allegations of disparate treatment.  Accordingly, your argument that the EEOC's Request for Information is overbroad lacks merit."  (Ex. 9 to Shifman Decl.).  Ms. Juntunen responded later that day, stating that she needed to consult with management regarding the release of information.  She further stated: "I am a bit surprised by your comment that Charging Party is alleging class allegations of disparate treatment since I don't recall any class allegations in her initial or amended charge.  Could you please clarify what class allegations she is alleging?"  (*Id.*).  Ms. Shifman replied to Ms. Juntunen's email within a couple hours and indicated Plaintiff's view that Defendant's objections were unfounded, and she also informed Ms. Juntunen that Ms. Doneyhue "indicated she believes she has been discriminated against as well as similarly situated female former and current employees" and thus "there are sex-based class allegations."  (Ex. 9 to Shifman Decl.).

On January 12, 2009, Defendant agreed to provide supplemental information in response to the RFI.  This information included "a listing of active employees (termed employees were previously provided) that have worked on Ray Wile's team since May 7, 2006 to the present."  (Ex. 4 to Juntunen Decl.).  Defendant did not include personal information for supervisors because Ms. Juntunen wanted to be present for any discussions with these persons.  (*Id.*).

On April 21, 2009, Ms. Shifman emailed Ms. Juntunen with a second RFI, which contained requests for 12 additional categories of information.  This request sought information

4

on a number of subjects beyond Mr. Wile's team, including an organizational chart for the Polaris location, payroll records for each individual employed in Ms. Doneyhue's "job classification and department," and a statement concerning "whether any other individual has complained to any supervisor or manager concerning the conduct described in the Charges of discrimination." (Ex. 10 to Shifman Decl.). On April 30, 2009, Ms. Juntunen responded to this RFI by stating: "I've reread Ms. Doneyhue's charge allegations and don't seem to see any class allegations. I recall you told me once before where they were coming from, but I can't remember what you said . . . could you please let me know." (*Id.*). Later that day, Ms. Shifman responded by stating, "Ms. Doneyhue provided the names of her former co-workers who she felt would provide relevant information regarding her employment concerns." (*Id.*).

On May 14, 2009, Defendant provided its responses and objections to Plaintiff's second RFI. Defendant objected to all but one request and asserted various objections, including attorney-client privilege and attorney work product, in response to each of the remaining requests. On June 2, 2009, Ms. Shifman sent an email response to Ms. Juntunen challenging Defendant's objections to the RFI. Ms. Shifman indicated that she wished to speak to Ms. Juntunen about the information she gathered during the investigation, and that she was prepared to recommend a finding that a statutory violation had occurred. Ms. Juntunen was on vacation and did not respond to the email until June 9, 2009. Prior to receiving a response from Ms. Juntunen, however, Ms. Shifman had forwarded the matter to Plaintiff's legal department for review.

On June 8, 2009, Plaintiff issued a letter of determination ("LOD"), reflecting its conclusion that Defendant had violated Title VII. Plaintiff attached a proposed "Conciliation Agreement" to the LOD. The LOD states in part:

5

> After a thorough review of the record, the evidence reveals Charging Party [Ms. Doneyhue] and a class of similarly situated female employees were repeatedly subjected to a hostile work environment based on their sex and were denied equal terms and conditions of their employment. Respondent [Chase] failed to take reasonable care to prevent and correct the harassment. Furthermore, Charging Party was performing at a satisfactory level and she was discharged in retaliation for her protected activity. Based on the foregoing, I have determined that the available evidence establishes that Respondent's actions violate Title VII.

(Doc. 27-8). Plaintiff advised Defendant that it would attempt to resolve the matter through informal conciliation:

> Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. In this regard, conciliation of this matter has now begun. Please be advised that upon receipt of this finding, any reasonable offer to resolve this matter will be considered. The Commission is seeking an amount up to three hundred thousand dollars for compensatory damages and/or punitive damages and actual monetary costs incurred by the Charging Party and all aggrieved individuals. . . . Again, the Commission is postured to consider any reasonable offer during this period. If any offer has not been previously submitted, the Responded is requested to accept, reject or submit a counteroffer to the enclosed conciliation agreement concerning Charging Party and to do so within ten (10) days of the receipt of this letter.

*Id.* The proposed Conciliation Agreement provides for relief in the amount of $300,000 for Ms. Doneyhue and $2 million to be distributed among every class member affected by the discrimination. The proposed agreement also states that "[d]uring the [conciliation] process the identity of the class member[s] and the amount of damages owing to each will be determined by the Commission. Respondent agrees to cooperate with the Commission in identifying and locating class members." (Ex. 13 to Shifman's Decl.).

On June 12, 2009, Ms. Shifman, Ms. Juntunen, and Linda Brinker, who is also an Employee Relations Manager/Vice President for Defendant, participated in a telephone

conference that lasted approximately 40 minutes and concerned Ms. Shifman's investigation of Ms. Doneyhue's charges.  During the telephone conference, Ms. Shifman "detail[ed] the reasons for the cause finding, including a description of the information I received from Charging Party, witnesses and the respondent."  (Shifman Decl. ¶ 21).  According to Ms. Shifman, "At no time during this call did I inform them that the class claims were limited to only those female employees who reported to Ray Wile.  In addition to other details I provided, I also informed Defendant's representatives that Charging Party and the witnesses complained about gender-based remarks, that male employees received the 'better' calls, [and] that younger males received promotions."  (*Id.*).  Ms. Shifman further states: "During the June 12, 2009, telephone call, we specifically discussed the class allegations.  At one point, Ms. Brinker and Ms. Juntunen asked me, quite insistently to identify members of the class, which I declined to do.  Neither Ms. Brinker nor Ms. Juntunen stated to me or gave me the impression that they believed the class was limited to females reporting to Mr. Wile, and I did not describe the class claims in that way."  (*Id.* at ¶ 22).

Ms. Juntunen acknowledges that Ms. Shifman informed her and Ms. Brinker that 31 current and former employees of Defendant had been contacted, and that these persons corroborated Ms. Doneyhue's allegations that there were inappropriate gender-related remarks in the workplace by her supervisors.  Ms. Juntunen further states: "At no time during the teleconference did Ms. Shifman provide Ms. Brinker and me with details regarding the identity of, or any specific allegations made by, other current or former Chase employees other than reiterating Ms. Doneyhue's allegations regarding gender-related remarks by her manager, Ray Wile; her supervisor, Terry Ritter; and some other unidentified males."  (Juntunen Decl., ¶ 13).

On June 15, 2009, Ms. Brinker informed Ms. Shifman that Defendant was considering Plaintiff's invitation to conciliate the matter and would provide a response to Plaintiff by July 10, 2009.  On July 10, 2009, Defendant responded to the LOD by requesting reconsideration of the determination.  The response states that the "Determination further raises class issues that were not raised at any point in the Charges or the investigation, thereby leaving Chase without an adequate opportunity to respond to all such claims that lack any definition, scope or size." (Ex. 16 to Shifman Decl.).  The response also argues, *inter alia*, that the determination lacks a basis in law or fact and relies on allegations never shared with Defendant.  The response concludes with a request to work together to negotiate the terms of a conciliation agreement.

On July 14, 2009, Plaintiff informed Defendant that the request for a reconsideration was denied, requested Defendant to provide its "best and final offer in this matter" to Ms. Shifman by July 20, 2009, and advised Defendant that the failure to timely respond would result in the matter being referred to the legal department for further processing.  (Ex. 17 to Shifman Decl.).  On July 16, 2009, Defendant again requested a reconsideration of the determination and an "opportunity to sit down to discuss Chase's forthcoming counter-proposal to the Commission's initial proposal." (*Id.*).  On July 17, 2009, Plaintiff rejected Defendant's request to discuss Defendant's concerns regarding the determination and again asked for Defendant's "best and final offer" by the previously established deadline of July 20, 2009.  (*Id.*).  Later that day, Defendant replied by stating that it was seeking to discuss a counterproposal with Plaintiff.

On July 20, 2009, Defendant offered a payment[1] to Ms. Doneyhue in exchange for a full release of claims and indicated its willingness to continue negotiations.  The next day, Plaintiff

---

[1] The amount of this offer is not disclosed in the record.

asked Defendant whether the offer was its final and best offer.  Defendant responded later that

day by stating that the offer was its "current best and final offer" and was "subject to negotiation

based on factual development, legal analysis and persuasion at a conference and/or conciliation."

(*Id.*).  Finally, on July 23, 2009, Plaintiff informed Defendant of its determination that efforts to

conciliate the matter had been unsuccessful, and of its additional determination that further

conciliation efforts would be futile or non-productive.

Therefore, the parties were unable to informally resolve their dispute on the administrative

level.  Consequently, Plaintiff filed the original Complaint (Doc. 2) on September 29, 2009,

pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. 1991,

§ 1981a.  Plaintiff subsequently filed an Amended Complaint pursuant to these statutes alleging,

*inter alia*, that Defendant engaged in unlawful employment practices, which "deprive[d] Aimee

Doneyhue and similarly situated current and former female employees who worked at Defendant's

Polaris Park facility during the period from July 8, 2006 to the present, of equal employment

opportunities, on the basis of sex and Doneyhue's engaged in conduct protected by Title VII."

(Am. Compl., ¶¶ 7-8).  Plaintiff seeks injunctive and monetary relief on behalf of Ms. Doneyhue

and the putative class described in the Amended Complaint.

Defendant moves for partial summary judgment on all "class" claims brought by Plaintiff

on behalf of female employees who did not report to Sales Manager Ray Wile.  This motion is

ripe for disposition.

As a preliminary matter, the Court notes that prior to the filing of Defendant's Motion for

Partial Summary Judgment, Plaintiff moved to compel responses to discovery requests (Doc. 20),

and Defendant moved for a stay pending resolution of its Motion for Partial Summary Judgment (Doc. 23).  By its motion to compel, Plaintiff argued that Defendant was improperly limiting its responses to discovery requests to information relating to employees within Ms. Doneyhue's work group, *i.e.*, mortgage consultants reporting to Mr. Wile.  On December 10, 2010, Magistrate Judge King issued an Opinion and Order granting Plaintiff's motion to compel and denying Defendant's motion to stay (Doc. 42).  Magistrate Judge King granted the motion to compel based on her finding that, even though Defendant limited its responses to information relating to mortgage consultants reporting to Mr. Wile, Plaintiff's claims are not limited to those female employees who reported to Mr. Wile.  Magistrate Judge King declined to grant the requested stay because of her finding that Plaintiff's claims "are not so lacking in merit as to justify the delay attendant to a stay of discovery relevant to those claims."  (Doc. 42, p. 8).

The Court will now resolve Defendant's Motion for Partial Summary Judgment.

## II.     Summary Judgment Standard

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Under Rule 56, "A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought."  Therefore, a party may move for "partial summary judgment" as a means to resolve only certain claims or defenses.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587.  The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53.  Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*,  570 F.2d 107, 111 (6th Cir. 1978).  The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (*quoting Liberty Lobby*, 477 U.S. at 257).  The existence of a mere scintilla of evidence in support of the opposing party's

11

position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III.    Discussion

Defendant argues that the Court should dismiss all "class" claims Plaintiff seeks to bring on behalf of female employees who did not report to Sales Manager Ray Wile. According to Defendant, Plaintiff's claims exceed the scope of its investigation, disclosure, and conciliation efforts. Plaintiff argues that it met all conditions precedent to include in its lawsuit class claims for similarly situated female employees working in the sales department at Defendant's Polaris facility.

Under Title VII of the Civil Rights Act of 1964, it is an unlawful employment practice for an employer to discriminate against an employee based on sex, 42 U.S.C. § 2000e-2; or because an employee has opposed unlawful discrimination, 42 U.S.C. § 2000e-3(a). As a prerequisite to

bringing suit under Title VII, a claimant must exhaust his or her administrative remedies. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002) (citing *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001)). The purpose of filing a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 534 (6th Cir. 2001); *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (noting that the purpose of exhausting administrative remedies "is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation."). "[T]he nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of that agency." *E.E.O.C. v. Keco Industries, Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984). The purpose of the EEOC's investigation of a discrimination charge is to determine if there is a reasonable basis for the charge. *Id.* The reasonable cause of determination issued as a result of the investigation is designed to notify the employer of the EEOC's findings and to provide a basis for later conciliation proceedings. *Id.*

Section 706 of Title VII permits the EEOC to sue a private employer on behalf of a "person or persons aggrieved" by the employer's unlawful employment practice. 42 U.S.C. § 2000e-5(f)(1). The EEOC may file a § 706 lawsuit against a private employer, after the filing of a charge of unlawful employment discrimination with the EEOC, if the EEOC finds "reasonable cause" the employer has violated Title VII. *Id.* Section 706 "makes the EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake." *EEOC v. Waffle House*, 534 U.S. 279, 291 (2002).

Defendant challenges the class claims set forth in the Amended Complaint as being beyond

13

the scope of the EEOC charges. The general rule in the Sixth Circuit is that "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2002) (quoting *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002)). This rule has come to be known as the "expected scope of investigation test." *Weigel*, 302 F.3d at 380. Under the "expected scope of investigation test," the Sixth Circuit has recognized that "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Id.* (quoting *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)).

"After determining that reasonable cause exists, the EEOC must attempt to conciliate the discrimination claim with the employer before it can be the subject of litigation in the district court. Only after the EEOC is unable to obtain an acceptable conciliation agreement from the employer may the agency file suit in court." *Keco Industries, Inc.*, 748 F.2d at 1101 (citing 42 U.S.C. § 2000e-5(b), (f)). The effort to conciliate must be made in good faith. *Id.* ("the EEOC must make a good faith effort to conciliate the claim"). However, the EEOC is "under no duty to attempt further conciliation after an employer rejects its offer." *Id.* Ultimately, "[t]he form and substance of those conciliations is within the discretion of the EEOC as the agency created to administer and enforce our employment discrimination laws and is beyond judicial review." *Id.*

Defendant concedes that Plaintiff placed it on notice of potential class claims. Defendant argues, however, that Plaintiff did not investigate any class claims relating to employees working outside Ray Wile's team, that even if it did engage in such an investigation it did not inform Defendant of the scope of that investigation, and that Plaintiff did not engage in reasonable

14

conciliation efforts as it related to class claims relating to employees not reporting to Ray Wile.

Defendant's arguments are unpersuasive.  Plaintiff's investigation was not limited to those who reported to Mr. Wile.  Upon conducting its investigation of Ms. Doneyhue's charges, Plaintiff expanded the investigation to inquire into whether there had been sexual discrimination of other females employed in Ms. Doneyhue's department.  Ms. Shifman has testified that she investigated Ms. Doneyhue's allegation of a sexualized work environment, and that her allegation was corroborated by witnesses.  Ms. Shifman found evidence that male mortgage consultants received preferential treatment by managers as it related to incoming calls at the sales department.  Therefore, Plaintiff's investigation extended beyond Mr. Wile's team.  This is not a case involving the EEOC not conducting any investigation of allegations relating to unnamed persons.  *Cf. EEOC v. CRST Van Expedited, Inc.*, 2009 WL 2524402 (N.D. Iowa Aug. 13, 2009).

Although Defendant concedes it was on notice of class claims, it challenges whether it was sufficiently apprised of the scope of the class claims.  Citing *EEOC v. Outback Steak House of Florida, Inc.*, 520 F. Supp.2d 1250 (D.C. Colo. 2007), Defendant argues that Plaintiff did not provide adequate notice of the nature of the charges against it, and therefore it was not on notice of the scope of the potential claims against it.  In *Outback Steak House*, the issue was whether the defendants were on notice of the national, and not just the regional, scope of the potential charges against them as a result of EEOC making general inquiries into national policies of the defendants.  The court found that the "EEOC failed adequately to notify Defendants of the potential national scope of the charges against them, and is, therefore, limited to seeking legal redress on a regional basis."  *Id.* at 1268.  The court noted that, had the EEOC sought extensive information about "current and/or former employees including employees working throughout the United States,"

15

the court's decision may have been different. *Id.* at 1266, n.3.

In the case at bar, the letter of determination identifies the class of persons allegedly subjected to the unlawful discrimination as "a class of similarly situated female employees." Ms. Shifman's investigation revealed that there was a sexualized work environment in the entire Sales Department, not just the part of the department managed by Mr. Wile. Ms. Shifman found witnesses who reported that managers in the department would manipulate incoming calls in favor of younger, male employees. It can be inferred from Ms. Shifman's testimony that Defendant was informed of the nature of the claims against it. While the initial RFI appeared to limit the investigation to Mr. Wile's team, Defendant was subsequently informed by email in December 2008 that Ms. Doneyhue had asserted class allegations of disparate treatment. And in April 2009, Plaintiff requested additional information that reflected the fact that it had decided to expand its investigation beyond Mr. Wile's team to include an investigation of other managers in the department, including the method of call allocation as it related to Ms. Doneyhue's job classification. That is, EEOC's second RFI sought specific information relating to the entire Sales Department. As such, Defendant's attempt to analogize this case to *Outback Steak House* is not convincing.

Therefore, the Court finds that there is evidence in the record demonstrating that Defendant was on notice that Plaintiff's investigation was not limited to Mr. Wile's team, and that the investigation concerned alleged conduct by others, including other managers, within the entire mortgage loan sales department at the Polaris facility. Thus, contrary to Defendant's arguments, there is evidence that it was on notice of the scope of the investigation.

Defendant's argument that Plaintiff did not make reasonable efforts to conciliate are

similarly not persuasive. Plaintiff's letter of determination advised Defendant that it had found evidence that Ms. Doneyhue "and a class of similarly situated female employees were repeatedly subjected to a hostile work environment based on their sex and were denied equal terms and conditions of their employment." (Doc. 27-8). Plaintiff further advised Defendant that it would attempt to resolve the matter through informal conciliation. Plaintiff presented an offer to Defendant in the form of a proposed Conciliation Agreement. Although Defendant indicated an apparent willingness to negotiate the terms of a conciliation agreement, it effectively rejected the proposal when it requested reconsideration of the determination. At that point in time, Plaintiff indicated it was not amendable to reconsidering its determination and requested Defendant's best offer. Defendant again requested reconsideration and indicated a willingness to engage in conciliation discussions. Plaintiff rejected the request, and again asked for Defendant's "best and final offer." Defendant subsequently made an offer that Plaintiff rejected.

Defendant presents no evidence or law to the Court that would necessitate a characterization of Plaintiff's attempt at conciliation to be anything other than made in good faith. Defendant challenges the approach taken in Plaintiff's attempt to conciliate the matter, but does not show that Plaintiff's efforts were not reasonable. Plaintiff outlined its cause for belief that Defendant had violated Title VII, presented a proposed Conciliation Agreement that is on its face made in good faith, and declined to engage in a substantive debate over Defendant's request to reconsider the cause determination. In effect, Defendant rejected Plaintiff's offer. As provided in *Keco Industries Inc.*, it is not for this Court to second guess the approach taken by Plaintiff in attempting to conciliated the matter. As long as its effort was made in good faith, it is not subject to judicial review. *See Keco Industries, Inc.*, 748 F.2d at 1101. Because Plaintiff attempted to

conciliate the matter in good faith, it provided Defendant a meaningful conciliatory opportunity.

Therefore, Defendant's arguments to the contrary are unpersuasive.

## IV.    Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Partial Summary

Judgment (Doc. 27).  All of Plaintiff's claims remain pending.

The Clerk shall remove Document 27 from the Court's pending motions list.

**IT IS SO ORDERED.**

*s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**