UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,                    Case No. 2:09-cv-864
                                          JUDGE GREGORY L. FROST
    v.                                   Magistrate Judge Norah McCann King

JP MORGAN CHASE BANK, N.A.,

        Defendant.

## ORDER

This matter is before the Court for consideration of Plaintiff's October 29, 2012 motion for sanctions (ECF No. 154), Defendant's memorandum in opposition (ECF No. 158), and Plaintiff's reply memorandum (ECF No. 159). For the reasons that follow, the Court finds the motion well taken.

### I. Background

In this Title VII litigation, Plaintiff, the Equal Employment Opportunity Commission, claims that Defendant, JP Morgan Chase Bank, N.A., has subjected female employees as a class to terms and conditions of employment that differed from similarly situated male employees. One theory of Plaintiff's case is that Defendant removed female employees from the call queue at Defendant's Polaris Park facility and had lucrative calls instead directed to male employees. Plaintiff therefore sought discovery of Defendant's skill login data records. These records include what skills were assigned by Defendant to individual mortgage consultants. The assignment of skills controls into what call queues a mortgage consultant is placed. In other

1

words, an electronic code groups calls into different skills that are identified by a three-digit number and that number controls what types of calls a mortgage consultant receives. The records also indicate the time at which a mortgage consultant logged into the automated call distribution system to receive incoming calls. Plaintiff's theory is that statistical analysis of this data would reveal discrimination. When Defendant did not provide Plaintiff with select data records and other information, Plaintiff filed a motion to compel. (ECF No. 30.)

On March 30, 2011, the Magistrate Judge filed an Order that addressed the relevant motion to compel. (ECF No. 66.) The Magistrate Judge explained in that Order that Plaintiff had previously served upon Defendant numerous document requests, including skill login data from January 1, 2006, through December 31, 2009. The parties disagreed over what could and should be produced and whether Defendant had violated a litigation hold by purportedly engaging in a routine purge of some data. In a thorough and well-reasoned opinion, the Magistrate Judge granted in part and denied in part Plaintiff's motion to compel. She concluded that Plaintiff "is entitled to discover the requested data from July 8, 2006 through December 31, 2009." (ECF No. 66, at PAGEID # 1361.) The Magistrate Judge therefore ordered Defendant to supplement its discovery response for the period July 8, 2006, through December 31, 2009. (ECF No. 66, at PAGEDID # 1370.) The Order provided that Defendant had to produce all such discovery by April 13, 2011. (*Id.*)

That production did not occur. Instead, on December 30, 2011, Plaintiff filed a motion to compel this and other discovery. (ECF No. 88.) The Magistrate Judge therefore held a telephone status conference on January 30, 2012, which led to an order that the parties confer and the scheduling of a second conference. (ECF No. 98.) On February 6, 2012, the Magistrate

Judge filed an Order in which she explained that the parties had agreed to resolve issues surrounding various motions, with Plaintiff withdrawing its motion to compel without prejudice to re-filing following the denial of a motion for summary judgment and with Defendant withdrawing a related motion to strike.  (ECF No. 100.)

Plaintiff asserts that Defendant has failed to comply with the Magistrate Judge's Order. Plaintiff explains that Defendant purged data from July 8, 2006 through March 10, 2007, allegedly as a result of Defendant's erroneous insistence that this litigation involved only one mortgage consultant and not class claims.  Following an express demand for data preservation, Plaintiff contends, Defendant still either allowed data to be purged or otherwise actively destroyed data from May to September 2007 and from September 2, 2009, through October 25, 2009, despite the fact that Defendant initially relied on excerpts of this data in earlier stages of this litigation.[1]  Plaintiff seeks discovery sanctions under Federal Rule of Civil Procedure 37(b) and (c) and the inherent authority of this Court against Defendant.

Following the filing of the motion for sanctions, Defendant provided Plaintiff with the 2009 data on November 16, 2012.  A few hours later, Defendant responded to the motion for sanctions by filing a memorandum in opposition in which Defendant stated that the 2009 data

---

[1] The parties apparently disagree on the scope of the gap dates involved in the discovery and sanctions requests.  The Magistrate Judge ordered production of data covering from July 8, 2006, through December 31, 2009.  (ECF No. 66, at PAGEDID # 1370.)  Plaintiff's motion for sanctions targets two time periods or data gaps, from "July 8, 2006, to September 8, 2007, and September 2, 2009, to October 26, 2009."  (ECF No. 154-1, at PAGEID # 9840.)  Defendant's memorandum in opposition then characterizes the motion as addressing "skill login data for two time periods: (1) September 2, 2009 through October 27, 2009; and (2) July 8, 2006 through September 7, 2007."  (ECF No. 158, at PAGEID # 10244.)  The one-day discrepancy for each time period is unexplained.  For ease of reference, this Court shall simply use the shorthand labels of "2007 data" and "2009 data."

"was not destroyed–in fact, EEOC is in possession of all 2009 skill login data for all relevant Mortgage Consultants." (ECF No. 158, at PAGEID # 10244.) Defendant then points out that because Plaintiff failed to comply with an asserted meet and confer obligation prior to the filing of the motion for sanctions, Plaintiff failed to learn of the existence of this data and its inadvertent omission from Defendant's supplementation before bringing the issue before this Court.

Briefing on the motion for sanctions has concluded, and the motion is ripe for disposition.

## II. Analysis

### A. Procedural Arguments

Before addressing the substance of Plaintiff's motion for sanctions, the Court must first discuss the threshold matter of whether it is procedurally barred from reaching the merits. Defendant argues that the Court cannot reach the merits of whether sanctions are warranted because Plaintiff's filing of the motion for sanctions contravenes the Magistrate Judge's February 6, 2012 Order. (ECF No. 100.) As noted, that Order memorialized various agreements between the parties, including the withdrawal of a motion to compel filed by Plaintiff. The Magistrate Judge included in that Order that "prior to any refiling of the motion to compel or the motion to strike, the parties shall attempt to resolve any remaining dispute relating to those motions." (*Id.* at PAGEDID # 2444-45.) Defendant's premise is that because the motion to compel targeted, among other things, skill login data from July 8, 2006, through September 7, 2007, Plaintiff's motion for sanctions relates to this same data and therefore falls within the preclusive scope of the Magistrate Judge's Order.

4

Plaintiff attempts to counter Defendant's argument by insisting that the parties' agreement does not preclude the filing of a motion for sanctions. This may be true, but what Plaintiff overlooks is that regardless of whether any such intended preclusive effect was part of the parties' agreement, such a preclusive consequence nonetheless could exist as a result of the Magistrate Judge's February 6, 2012 Order. The relevant question is whether the preclusive effect of that Order reaches the filing of the motion for sanctions.

The Magistrate Judge stated in her Order that "[b]ased on the parties' agreement, it is **ORDERED** that - prior to any refiling of the motion to compel or the motion to strike, the parties shall attempt to resolve any remaining dispute relating to those motions." (ECF No. 100, at PAGEID # 2444-445.) The "based on" clause is ambiguous in that it does not make clear whether what follows are orders memorializing additional agreement terms specifically reached by the parties or whether what follows are orders that originated with the Magistrate Judge and that flow from what the parties did agree upon. In other words, the latter possibility is that as a result of what the parties agreed upon, the Magistrate Judge issued orders setting forth additional consequences that flowed from her perceived implications of the agreed terms. It does not matter which scenario is correct–whether the parties agreed to the orders or whether the Magistrate Judge came up with and then imposed the orders–because the end result is the same: there is a condition precedent to the filing of an additional motion to compel or motion to strike, and that is that the parties discuss between themselves "any remaining dispute" related to the motion to compel or motion to strike.

Defendant would have this Court accept the proposition that "any remaining dispute" sweeps in the motion for sanctions. Certainly, the motion for sanctions addresses subject matter

5

involved in the withdrawn motion to compel. But that certainty does not carry the dispositive force that Defendant assigns. Rather, the Magistrate Judge's Order is simply a directive that neither party can file a *specific* motion without first consulting with the other side. Plaintiff must consult Defendant and, in the event of a failure to reach an agreement resolving their discovery dispute, Plaintiff can then re-file its motion to compel. This clear directive does not speak to the filing of other motions Plaintiff could pursue, such as the motion for sanctions. The directive reaches only a re-filed motion to compel and motion to strike.

Plaintiff's motion for sanctions therefore falls outside the Magistrate Judge's Order. Nothing in that judicial officer's directives means that Plaintiff could not file the pending motion for sanctions.

Defendant also argues that this Court should not consider the motion for sanctions because Plaintiff has failed to follow prerequisite procedures mandated by the Federal Rules of Civil Procedure and the Local Civil Rules. Defendant's premise is that because Plaintiff did not confer with Defendant on the substance of the motion for sanctions, Plaintiff has violated Federal Rule of Civil Procedure 37(d)(1)(B) and S. D. Ohio Civ. R. 37.1.

The Federal Rule provides that "[a] motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B). The Local Civil Rule in turn provides that

> Objections, motions, applications, and requests relating to discovery shall not be filed in this Court, under any provision in Fed.. R. Civ. P. 26 or 37 unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences. After extrajudicial means for the resolution of differences about discovery have been exhausted, then in lieu of immediately filing a motion under

> Rules 26 and 37, Fed. R. Civ. P., and S. D. Ohio Civ. R. 37.2, any party may first seek an informal telephone conference with the judicial officer assigned to supervise discovery in the case.

S. D. Ohio Civ. Rule 37.1. Local Rule 37.1 references Local Rule 37.2, which in turn provides:

> To the extent that extrajudicial means of resolution of differences have not disposed of the matter, parties seeking discovery or a protective order may then move for a protective order or a motion to compel discovery pursuant to Fed. R. Civ. P. 26(c) or 37(a). Such motion shall be accompanied by a supporting memorandum and by a certification of counsel setting forth the extrajudicial means which have been attempted to resolve differences. Only those specific portions of the discovery documents reasonably necessary to a resolution of the motion shall be included as an attachment to it.

S. D. Ohio Civ. R. 37.2.

On its face, Local Rule 37.1 thus contemplates one mandated step: that the parties exhaust among themselves all extrajudicial means for resolving any discovery dispute before filing any Rule 26 or 37 motion. Local Rule 37.1 then contemplates one discretionary step: that if the inter-party discussions have failed, either party *may but is not required to* request an informal telephone conference before filing a motion. Once extrajudicial means have failed, Local Rule 37.2 permits a party seeking or opposing discovery to file a motion with a supporting memorandum and certification.

As Plaintiff correctly points out, Defendant's reliance on these rules is a red herring. Neither the Federal Rules of Civil Procedure nor the Local Civil Rules require the filing of a certification here.

Plaintiff's failure to comply with the certification requirement of Rule 37(d)(1)(B) does not matter here because the requirement is inapplicable to Plaintiff's motion for sanctions. Rule

7

37(d)(1)(B) applies only to a motion for sanctions for failing to answer or respond under Rule 37(d)(1)(A). Plaintiff originally filed its motion for sanctions under Rule 37(b) (failure to comply with a court order) and Rule 37(c) (failure to disclose, to supplement an earlier response, or to admit), as well as the inherent authority of the Court. (ECF No. 154-1, at PAGEID # 9840.) After belatedly receiving the 2009 data, Plaintiff elected to withdraw that portion of its motion targeting spoliation of the 2009 data. (ECF No. 159, at PAGEID # 10271.) That election was curious because even if Defendant had turned over the full 2009 data, Defendant still failed to do so by the deadline set forth in the Magistrate Judge's March 3, 2011 Opinion and Order. (ECF No. 66, at PAGEID # 1361, 1370.) In other words, sanctions may not have been appropriate for spoliation, but sanctions might have been warranted under Rule 37(b) for failing to comply with a court order. Regardless, the end point is the same: Plaintiff is pursuing sanctions under a part of Rule 37 to which Rule 37(d)(1)(B) does not apply.

Local Rule 37.1 also does not provide Defendant protection from the merits of the motion for sanctions. There is no question that the motion for sanctions is a motion related to discovery filed under a provision of Rule 37. But there is equally no question that the parties' prior dealings indicate that no extrajudicial means exist for resolving the dispute that lies at the heart of the motion for sanctions. *See, e.g.,* ECF No. 159, at PAGEID # 10273 n.1 (summarizing voluminous dealings between parties). This exhaustion is enough to satisfy the rule here, regardless of whether the exhaustion has been memorialized in a certification.

Local Rule 37.1 does not itself impose a certification requirement; rather, the local rule mandates only that the parties exhaust extrajudicial means. Local Rule 37.2 does contain a certification of exhaustion requirement, but only in regard to the filing of a motion to compel or

a motion for a protective order. The plaint text of Local Rule 37.2 makes its inapplicability here obvious in two ways, just as it did in *May v. Pilot Travel Centers LLC*, No. 2:05-cv-918, 2006 WL 3827511 (S.D. Ohio Dec. 28, 2006). The same reasons that this Court identified in *May* apply here:

> First, Plaintiff is not "seeking discovery or a protective order" as Local Rule 37.2 contemplates; rather, Plaintiff is seeking the imposition of sanctions. Second, the local rule contemplates only motions filed specifically pursuant to Federal Rules of Civil Procedure 26(c) or 37(a), not a motion under Rule 37(c).

*Id.* at *3. Thus, Local Rule 37.2 is inapplicable to Plaintiff's motion under Rule 37(c), and to the extent that Defendant seeks to apply the rule in this context, Defendant errs.

Pointing to *Corzin v. Crown Appraisal Group, Inc.*, Nos. 2:10-cv-00581, 2:10-cv-00764, 2011 WL 3566004 (S.D. Ohio Aug. 15, 2011), Defendant argues that the undersigned has previously held that the failure to file a certification that extrajudicial resolution has been exhausted mandates rejection of the motion for sanctions.[2] In *Corzin*, this Court addressed a motion for reconsideration of a decision that denied a motion for a protective order and for sanctions. The Court stated:

> Fed. R. Civ. P. 37(a)(1) states that any motion under this rule "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." This is no idle formality or technical requirement. The Local Rules of the Southern District of Ohio mandate that "[o]bjections, motions, applications, and requests relating to discovery *shall not be filed in this Court,* under any provision in Fed. R. Civ. P. 26 and 37 unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences." S.D. Ohio Civ. R. 37.1, emphasis added. Furthermore, they state that "[t]o the extent that extrajudicial

---

[2] The parties cite *Corzin* in their briefing using the spelling of the plaintiff's name as it appears on Westlaw. As a result of a scrivener's error, that spelling is incorrect. The Court has used the correct spelling herein.

> means of resolution of differences have not disposed of the matter," parties may file motions under Rule 37, although "[s]uch motion shall be accompanied by a supporting memorandum and by a certification of counsel setting forth the extrajudicial means which have been attempted to resolve differences." S.D. Ohio Civ. R. 37.2. Failure to include such certification that the movant has attempted to resolve the controversy without recourse to the immediate filing of a motion is grounds, as the Magistrate Judge correctly found, for rejection of the request on its face.

*Id.* at *2. This reasoning is partially flawed.

The end result in *Corzin* remains correct given that there was no informal efforts to resolve a readily resolvable dispute. *Id.* at *1. The lack of any such efforts violated Local Rule 37.1. Additionally, by pursuing a protective order (regardless of whether that was the best characterization of the relief sought), the movants in *Corzin* subjected at least part of their motion to the certification requirement of Local Rule 37.2. In hindsight, the Court should have avoided the loose language that appeared to extend the specific Local Rule 37.2 certification requirement to all Rule 37 motions.

This Court's imposition of a certification requirement culled from Rule 37(a)(1) was simply incorrect. There was no motion to compel at issue in *Corzin*, which meant that the Rule 37(a)(1) certification requirement was inapplicable. By conflating the Rule 37(c)(1) motion standard with the Rule 37(a)(1) certification requirement, this Court required more of the movants than Rule 37 demands. *Corzin* thus fails to provide the persuasive authority Defendant assigns it.

Given the foregoing and without even needing to explore inherent authority arguments, the Court rejects Defendant's procedural bars to consideration of the motion for sanctions. Defendant asserts that Plaintiff failed to "make any effort whatsoever to meet and confer with [Defendant] before filing its Motion for Sanctions." (ECF No. 158, at PAGEID # 10248.)

Defendant also faults Plaintiff for failing to file a certification of exhaustion of extrajudicial means of resolution. The history of the skill data records issue points to an ongoing fruitless effort at achieving extrajudicial resolution. The parties have wasted enough of their time and resources–and more than enough of this Court's time and resources–in regard to this issue. Moreover, what could come of a meet and confer on this issue? Defendant admits the relevant data has been destroyed; all that remains is determining whether such destruction was impermissible and, if so, what sanctions, if any, would be appropriate. It is nonsensical to expect that additional consultation could lead Defendant to agree it has engaged in sanctionable conduct and to sign on to sufficient, negotiated sanctions. Finally, there is no certification requirement applicable here. This Court can properly consider the merits of the motion for sanctions.

### B.  Merits

Having apparently narrowed the scope of its motion via the reply memorandum, Plaintiff now seeks sanctions under only Rule 37(c) and the inherent authority of this Court.[3] *See* ECF No. 159, at PAGEID # 10272 n.1 ("Fed. R. Civ. P. 37(c) and the Court's inherent authority to sanction spoliation are the bases upon which EEOC brings its Motion."). Rule 37(c) targets a party's failure "to provide information or identify a witness as required by Rule 26(a) or (e)" and provides for the discretionary imposition of specific possible sanctions or any other

---

[3] The Court uses the word "apparently" because although Plaintiff indicates on the first page of its reply memorandum that it communicated to Defendant that Plaintiff "deems it prudent to withdraw the portion of its Motion for Sanctions pertaining to the alleged spoliation of 2009 gap data pending detailed review," Plaintiff proceeds later in that brief to argue why the belated production of the 2009 data is prejudicial and warrants sanctions. (ECF No. 159, at PAGEID # 10271, 10280-83.) Regardless of what Plaintiff intended to accomplish by introducing confusion into its request for sanctions, the full scope of its motion is ultimately irrelevant because the sanctions the Court deems appropriate would not change even if the 2009 data disclosure remains relevant.

sanctions the Court deems appropriate. Fed. R. Civ. P. 37(c)(1). Additionally, this Court has the inherent authority to sanction a violation of the Rule 26(a) duty to disclose or the Rule 26(e) duty to supplement that is not tied to Rule 37. *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 344 (6th Cir. 2002).

There is no question that Defendant engaged in the conduct for which Plaintiff seeks sanctions: the destruction of 2007 skill login data. Defendant concedes that it destroyed this data, but asserts that such action was the result of routine purging of electronic records. Plaintiff counters that Defendant could have and should have stopped such purging given the fact that Defendant was on notice that the destroyed data was relevant to this litigation.

Defendant's position that it was not necessary to safeguard such data from purging is simply without foundation. Defendant asserts that "[u]ntil September 2010, [Plaintiff] did not articulate its allegations in a manner that made the skill login data relevant to its claims." (ECF No. 158, at PAGEID # 10244.) This Court disagrees. In her March 30, 2011 Opinion and Order, the Magistrate Judge provided a detailed account of the background surrounding this data and correctly concluded that, despite Defendant's protestations to the contrary, this data and the discriminatory practices it may or may not have indicated informed the time period involved in this litigation. (ECF No. 66, at PAGEID # 1360-61.) Plaintiff's pleading put Defendant on notice of the scope of the individuals involved–a class, as opposed to a single person–and of the reach backward in time to data preceding the period before the filing of the EEOC claims.

Additionally, as Plaintiff details in its briefing, Plaintiff provided Defendant with notice on numerous occasions of the need to retain the destroyed data. Especially notable are the December 15, 2008, April 21, 2009, and June 8, 2009 notices by Plaintiff that a class was at

issue; these notices came immediately prior to the destruction of relevant data from the three years prior. This data likely would inform Plaintiff's claims and Defendant's defense; both sides rely on expert statistical analysis and opinions related to skill login data. It is curious to this Court that defendant began to preserve some other electronic information shortly thereafter, but not all skill login data until late 2010. This has left Plaintiff with indirect data for a period of 2006-2007, such as call records. Defendant's own expert argues that such call records cannot provide an accurate picture of the time period in question, and Defendant has in fact moved to strike Plaintiff's expert's analysis of the call records.

Defendant's failure to establish a litigation hold is inexcusable. The multiple notices that should have triggered a hold and Defendant's dubious failure if not outright refusal to recognize or accept the scope of this litigation and that the relevant data reaches beyond the statutory period present exceptional circumstances that remove the conduct here from the protections provided by Rule 37(e). *See* Fed. R. Civ. P. 37(e) ("Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system.").

The conduct involved here is sanctionable even without resort to the federal rules or to state law claims for relief. The Sixth Circuit has explained that "the authority to impose sanctions for spoliated evidence arises not from substantive law but, rather, 'from a court's inherent power to control the judicial process.' " *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). This inherent power is tied to addressing conduct that disrupts the judicial process, and such conduct is

13

precisely what is before the Court today. As the Fourth Circuit explained in *Silvestri*, "[t]he policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth." 271 F.3d at 590. Defendant's destruction of evidence under the auspices of routine purging has hampered the ease of if not the ability to uncover exactly what if anything impermissible has transpired here.

Defendant has engaged in sanctionable conduct in regard to the destroyed 2007 data, and sanctions are warranted. The extant question is what is the appropriate remedy.

### C. Sanctions

Defendant's conduct warrants one or more sanctions. It does not warrant the windfall Plaintiff seeks by asking for partial default judgment, preclusion, adverse inferences, rebuttable adverse inference, and other sanctions. Some of the sanctions sought are more punitive than remedial, and while this Court is not pleased with Defendant's conduct, it is interested foremost in reaching the truth of the matter involved here and not in punishing Defendant excessively. As the Sixth Circuit has explained, "a proper spoliation sanction should serve both fairness and punitive functions." *Adkins*, 554 F.3d at 652. This is often a tricky balancing act.

The Court is cognizant that "the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Id.* at 652-53. Defendant's conduct constitutes at least negligence and reaches for willful blindness bordering on intentionality. Fairness and punitive considerations thus promote more than a slap on the wrist. Entering summary judgment or a default judgment for Plaintiff is too much in light of the fact that although the spoliation involved here hampers Plaintiff's ability to prove its case, the spoliation

does not destroy it.  Providing the jury with a permissive adverse inference instruction related to the destroyed evidence as the only sanction, however, is too little in light of the fact that one of Defendant's pending summary judgment motions theoretically could prevent Plaintiff from ever reaching a jury.  Nor do several of the other sanctions that this Court has considered truly address the possible effect of the spoliation on the merits, as opposed to mitigating any increased costs or inconvenience that Plaintiff has endured.  For example, awarding Plaintiff the costs it incurred in employing its expert to engage in the likely otherwise unnecessary task of analyzing the call records (with a deduction of course for the time the expert would have spent analyzing skill login data for that period) does little to serve the search for truth.[4]

The most reasonable and pragmatic course is to couple the giving of a permissive adverse inference instruction with a sanction that counters any summary judgment advantage that Defendant might have obtained by its conduct that could contribute to Plaintiff never reaching a jury.  Accordingly, the Court in its discretion concludes that denying Defendant's motion for summary judgment that turns in part on skill login data is not simply appropriate, but also necessary.  (ECF No. 105.)

This Court recognizes that the lack of the destroyed skill login data can also logically inform Plaintiff's own motion for summary judgment, which is currently pending before this Court. (ECF No. 101.)  Because this motion cannot result in the failure of Plaintiff's claims, the

---

[4] Along these same lines, this Court considered and rejected awarding Plaintiff the attorney fees and costs incurred in briefing the motion for sanctions.  Defendant in fact asked for its attorney fees and costs if it prevailed on the motion for sanctions.  Because the Court is most concerned with the effect of the spoliation on the merits, this Court has attempted to fashion sanctions that primarily mitigate the effect of Defendant's conduct on the merits rather than sanctions that heal every inconvenience incurred.

effect that the lack of the destroyed data might have on this Plaintiff's motion is quite different than the effect it could have had on Defendant's motion. In other words, because the success of Defendant's motion could end some or all of Plaintiff's claims, denial of that motion is necessary. Because the failure of Plaintiff's motion would simply mean that Plaintiff would proceed to trial on its claims, the possible spoliation-related effect on Plaintiff's motion is notably less. This distinction removes the necessity of including Plaintiff's motion within the scope of the sanctions imposed today, although the Court recognizes that the spoliation likely has some effect on Plaintiff's pursuit of partial summary judgment. The Court will address the merits of Plaintiff's motion in a subsequent Opinion and Order.

Also beyond the necessary scope of the sanctions is Defendant's other motion for summary judgment. (ECF No. 107.) Because the destroyed skill login data does not inform that motion, which is based on judicial estoppel, the other motion falls outside the scope of this Court's attempt to remedy the effect of the spoliation. The Court will also address the merits of this remaining motion in a subsequent Opinion and Order.

In addition to the denial of the summary judgment motion, the Court concludes that a permissive adverse inference instruction is necessary because the effect of the spoliation of course does not end with consideration of dispositive motions. Because the spoliation informs the trial evidence as well, an adverse inference instruction is necessary for remedial purposes. *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 555 (6th Cir. 2010). In concluding that such an instruction is warranted, this Court is cognizant of the Sixth Circuit's articulation of the three-part standard involved:

"[A] party seeking an adverse inference instruction based on the destruction of

16

> evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind;' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, Nos. 10-6102 & 11-5174, 2012 WL 4945607, at * 7-8 (6th Cir. Oct. 18, 2012) (quoting *Beaven*, 622 F.3d at 553). The circumstances of this case satisfy each prong of the mandated inquiry.

First, as noted, Defendant was put on sufficient notice multiple times that the destroyed data might be relevant to potential litigation. The Sixth Circuit has held that "the obligation element is met where a defendant knows evidence might be relevant to future potential litigation." *Id.* at *8. Second, Defendant, which was well aware of its three-year purge cycle and that the data at issue here fell within that period, was at best negligent and at worst defiant of its litigation responsibilities in knowingly permitting the unqualified destruction of data. The court of appeals has explained that "the 'culpable state of mind' element may be satisfied by showing only that 'the evidence was destroyed "knowingly, even if without intent to breach a duty to preserve it, or negligently." ' " *Id.* (quoting *Beaven*, 622 F.3d at 553). Third, as discussed above, the destroyed data was relevant to Plaintiff's case. Defendant's own expert values skill login data as the best evidence relevant to the claims and defenses involved.

The Court therefore imposes the sanctions of denying Defendant's merit-based motion for summary judgment and providing the jury with a permissive adverse inference instruction regarding the destroyed data.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for sanctions (ECF No. 154) and **DENIES** Defendant's motion for summary judgment (ECF No. 105). Plaintiff is also entitled to a permissive adverse jury instruction related to the spoliation if this litigation proceeds to a jury trial.

**IT IS SO ORDERED.**

      /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE